760 So.2d 43 (2000)
AIR COMFORT SYSTEMS, INC. and Jimmy D. Lewis, Appellants,
v.
HONEYWELL, INC., Appellee.
No. 1998-CA-01225-COA.
Court of Appeals of Mississippi.
May 16, 2000.
*44 Wayne Dowdy, Magnolia, Attorney for Appellants.
Richard C. Roberts, III, Jackson, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. A subcontractor on a construction project brought suit against one of its own subcontractors, alleging damages arising from the defendant's performance. The Pike County Circuit Court granted summary judgment in favor of the defendant after finding that the claim was barred by the applicable statute of limitations. On appeal the plaintiffs alleged that the wrong statute of limitations was applied to their claims. We find no error and affirm.

FACTS
¶ 2. In 1991, Sullivan Enterprises, Inc., was the general contractor for work at Dyess Air Force Base in Abilene, Texas. Subcontracts were executed by Sullivan, including one to the plaintiff Air Comfort Systems, Inc., to perform electrical, plumbing and mechanical work. Jimmy Lewis is the owner of Air Comfort, a Mississippi corporation. Air Comfort then entered into a separate subcontract with the defendant Honeywell, Inc., to furnish and install the pneumatic temperature control system, which was part of Air Comfort's subcontract. Honeywell then subcontracted the installation of certain control valves back to Air Comfort in another, separate agreement.
¶ 3. The agreement between Air Comfort and Sullivan Enterprises, Inc., the general contractor, required that Air Comfort and its subcontractors comply with the Buy American Act, 41 U.S.C. § 10. This statute mandates that any parts used in the fulfillment of the contract be manufactured in the United States. Honeywell provided materials that included a number of three-way control valves that were *45 plainly marked as being manufactured in Canada.
¶ 4. After the Canadian valves were installed, Air Comfort and Honeywell's compliance with the Buy American Act was questioned by the Air Force. Honeywell contended that the valves were component parts of a larger temperature control system and thus complied with the Act. Honeywell provided documentation to that effect to the Air Force. While the dispute was still pending, the general contractor Sullivan insisted that the Canadian valves be replaced with American-made ones. Soon after May 4, 1992, Air Comfort replaced the Canadian valves. On June 2, 1992, Air Comfort submitted a bill to Honeywell for over $15,000 for the expenses of substituting new valves. Honeywell alleged that it was still owed almost $22,000 on the contract.
¶ 5. Eventually Honeywell filed suit against Air Comfort in the United States District Court for the Northern District of Texas. No answer was filed, as settlement discussions commenced immediately. Air Comfort ultimately agreed to pay $14,000 to Honeywell. After the payment was made, an order was entered dismissing the suit with prejudice.
¶ 6. The dispute over Air Comfort and Honeywell's compliance with the Buy American Act precipitated an investigation by the United States Attorney's office in Texas. Air Comfort's records were subpoenaed in June 1992 by a federal grand jury in Abilene. No indictments were issued, no one from Air Comfort was required to appear, and the records were returned to Air Comfort with a statement that the investigation was closed.
¶ 7. All of these events preceded the commencement of the suit in Mississippi state court that is on appeal here. On November 22, 1996, Air Comfort filed a complaint that Honeywell made negligent and reckless misrepresentations in its contractual dealings with Air Comfort. The company president, Jimmy Lewis, was later added as a plaintiff and additional claims were made for negligent and intentional infliction of emotional distress.
¶ 8. On October 20, 1997, following extensive discovery, Honeywell filed a motion for summary judgment alleging that Air Comfort's action was barred by the three-year statute of limitations, as well as the doctrines of res judicata, equitable estoppel, compromise and settlement and avoidable consequences. Air Comfort asserted that a longer six year statute of repose regarding improvements to real property applies.
¶ 9. On June 28, 1998, the trial court rejected Honeywell's arguments except for the statute of limitations. That was enough, as the perceived limitations problem caused the complaint to be dismissed with prejudice. Air Comfort appeals this decision. Honeywell cross-appeals asserting that the trial court erred in not applying the other doctrines such as res judicata as well.

DISCUSSION
¶ 10. This suit claims injuries arising from negligent performance under the 1991 contracts. Some of the damages are alleged to arise from the tort of negligent misrepresentation committed by Honeywell regarding the country of origin of the valves. The circuit judge determined that these interwoven tort and contract claims were barred by the three-year statute of limitations that applies when "no other period of limitation is prescribed...." Miss.Code Ann. § 15-1-49 (Rev.1995).
¶ 11. Conversely, Air Comfort argues that there is a relevant statute that preempts application of this "catch-all" statute. The following six-year statute is said to be the correct one:
No action may be brought to recover damages for injury to property, real or personal, or for an injury to the person, arising out of any deficiency in the ... construction of an improvement to real property, ... against any person, firm or corporation performing or furnishing *46 the design, planning, supervision of construction or construction of such improvement to real property more than six (6) years after the written acceptance or actual occupancy or use, whichever occurs first, of such improvement by the owner thereof. This limitation shall apply to actions against persons, firms and corporations performing or furnishing the design, planning, supervision of construction or construction of such improvement to real property for the State of Mississippi or any agency, department, institution or political subdivision thereof as well as for any private or nongovernmental entity....
Miss.Code Ann. § 15-1-41 (Rev.1995).
¶ 12. The supreme court has found that the purpose of this statute was to fix a time within which actions could be brought against architects, builders and others for injuries arising out of any patent deficiency in the design or construction of a structure on real property. DeVille Furniture Co. v. Jesco, Inc., 423 So.2d 1337, 1340 (Miss.1982). The caption to the original Act was this:
An Act to limit the time within which actions may be brought for patent deficiencies in design, planning, inspection, supervision or construction of improvements to immovable property or for property damage, personal injury or wrongful death arising from such deficiency.
Id., (quoting 1966 Miss. Laws, ch. 397). A 1972 amendment changed the application of the statute from actions "arising out of any patent deficiency" to actions "arising out of any deficiency" in the design and construction of improvements to real property. Id. at 1341. The amendment did nothing, however, to change the effect which was to limit the time within which certain actions could be brought for property damage, personal injury or wrongful death arising from real property improvements. As a "statute of repose," the period for suit commences with the act of constructing the improvements and not with an injury.
¶ 13. Here the plaintiffs seek redress for a variety of damages arising from the alleged breach of the contract. The first layer of claims is for reimbursement of the expenses that Air Comfort incurred to correct the deficiencies. As the complaint states, "great expense to replace Defendant's parts which did not comply with federal statutes" resulted. Honeywell raised an affirmative defense that those costs were part of a settlement of the earlier suit that Honeywell filed in Texas federal court. There Honeywell sought almost $22,000 as final payment under the contract; in correspondence between the attorneys, Air Comfort claimed almost $16,000 for extra costs to bring the work in compliance with the Buy American features of the contract. There is evidence that the parties' respective claims were the basis for a settlement whereby Air Comfort paid Honeywell $14,000.
¶ 14. On summary judgment, the circuit court found that the settlement of the Texas litigation did not bar the Mississippi suit since Air Comfort had never filed an answer in Texas. Had it filed an answer, Air Comfort's claim for about $16,000 in extra expenses would have been a compulsory counterclaim. The trial court also rejected that a binding compromise and settlement of Air Comfort's claims had occurred since no release was signed. Moreover, the bonding company on the Air Force base project had pressured Air Comfort to settle Honeywell's contract claim, and according to the court the "commercial urgency" of the settlement was another reason that the compromise and settlement doctrine should not bar the present suit.
¶ 15. Another layer of claims is based on incidental and consequential damages resulting from the alleged failure to comply with the Buy American Act. There is an assertion that Air Comfort forfeited money that it was owed by the general contractor Sullivan in order to end the dispute about the Canadian-built valves. Further, there *47 were expenses resulting from the grand jury investigation that occurred. Finally, there is a claim by Air Comfort's president that he suffered emotional damages.
¶ 16. Honeywell asked Air Comfort's president at a deposition to categorize the claims that were said to total $47,500. He answered that $15,800 were the actual expenses to replace the valves, $18,500 was money the general contractor Sullivan owed Air Comfort but which was forfeited in order to end the dispute over the valves, and the remainder was the company president's time and general expenses in addressing the dispute. No amount for emotional distress was mentioned.
¶ 17. Shortly before the summary judgment, the plaintiff sought to amend the complaint to allege total damages of $72,500. The defendant objected, in part because it claimed that the forfeited $18,500 was being claimed twice to reach the new figure. No ruling was made on the amendment prior to the entry of judgment.
¶ 18. Generically then, the claims being brought are for repair and replacement expenses resulting from an alleged failure to perform under the contract, as well as consequential damages. The emotional distress damages were not mentioned in the president's recapitulation of the components of the damages. They are tort damages resulting from the negligent misrepresentation. Our issue is whether the statute of repose for injuries resulting from improvements to real property applies to any of these claims. All the precedents that Air Comfort cites in its brief regarding this statute deal with personal injury or property damage from alleged defects in improvements.
¶ 19. We address Air Comfort's tort claims first. Negligent misrepresentation and negligent infliction of emotional distress are governed by the "catch-all" three-years statute. Miss Code Ann. § 15-1-49; see Norman v. Bucklew, 684 So.2d 1246, 1256 (Miss.1996); City of Mound Bayou v. Johnson, 562 So.2d 1212, 1217 (Miss.1990). If the claim is seen as intentional and not negligent infliction of emotional distress, a one-year statute of limitations applies. Miss.Code Ann. § 15-1-35 (Rev.1995); see Nichols v. Tri-State Brick & Tile Co., Inc., 608 So.2d 324 (Miss. 1992). If Honeywell committed a tort while performing under this construction contract, the time period for bringing a suit to recover damages for that tort expired.
¶ 20. The remaining damages are more directly connected with the real estate improvements. Air Comfort argues that it repaired the defects, forfeited money it was due under its contract in order to settle a dispute with the general contractor about the installation of the valves, and incurred overhead and attorneys' expenses in addressing the entirety of the problems.
¶ 21. To understand whether these claims are subject to the statute of repose, we first examine the effect of the statute. A suit seeking damages for an injury that results from defects in an improvement to real property must be brought within a certain period of time of completion, regardless of when the injury occurs. See Smith v. Fluor Corp., 514 So.2d 1227 (Miss.1987). For the statute even to apply, there must be a claim that seeks the following: 1) damages for 2) injury to property, real or personal, or for an injury to the person, 3) arising out of any deficiency in the construction or the design, planning, supervision or observation of construction 4) of an improvement to real property. The defendants are those who perform or furnish the design, planning, supervision of construction or construction of the improvement. See Miss.Code Ann. § 15-1-41 (Rev.1995).
¶ 22. The obvious problem for Air Comfort is that what it is seeking are contract damages for an alleged breach, not damages arising out of an injury to person or property. True, the contract concerned real property. Yet if the claim relating to construction of a building is *48 solely for failure to place the contracted-for quality of shingles on a roof, or to use the correct brand of plumbing fixtures, or to meet the contract schedule for completion, that is a contract claim and not a personal injury or property damage claim. Frequent inspections of construction and final review before acceptance of the facility are means to assure compliance with construction contract obligations. This alleged failure was discovered during construction. If the failure to comply is discovered later, then the statute of limitations for suit on the contract becomes a possible affirmative defense. However, if water damage inside the structure proximately resulted from using a lower quality of shingles on a roof than was required under the contract, the statute of repose would be relevant to a claim for that property damage. DeVille Furniture, 423 So.2d at 1340.
¶ 23. There is no claim that the facility constructed at the Air Force base in Texas was "injured" by the use of Canadian valves. There was not a failure, for example, of the Canadian valves to work properly in conjunction with the other equipment involved with the temperature control system such that property damage occurred. Air Comfort's finances were injured in addressing the alleged defect, but that is not damage to property or personal injury under the statute.
¶ 24. Honeywell raises several issues in its cross-appeal alleging that the trial court erred in not granting summary judgment on the grounds of res judicata, equitable estoppel, compromise and settlement and avoidable consequences. Having resolved the first issue in Honeywell's favor, we find the remainder to be moot.
¶ 25. THE JUDGMENT OF THE PIKE COUNTY CIRCUIT COURT GRANTING SUMMARY JUDGMENT AND DISMISSING THE CASE IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANTS.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.